**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **BANNER HEALTH** f/b/o **BANNER GOOD SAMARITAN MEDICAL CENTER**, *et al.*, |
| *Plaintiffs*, |
| v. |
| **KATHLEEN SEBELIUS**, Secretary of the U.S. Department of Health and Human Services, |
| *Defendant*. |

Civil Action No. 10-01638 (CKK)

**MEMORANDUM OPINION**
(November 26, 2012)

Plaintiffs are twenty-nine organizations that own or operate hospitals participating in the Medicare program. They have sued the Secretary of the Department of Health and Human Services (the "Secretary"), challenging certain regulatory actions taken by her in the course of administering Medicare's reimbursement scheme. Plaintiffs allege that as a result of the Secretary's flawed promulgation and implementation of various payment regulations, they were deprived of more than $350 million dollars in Medicare "outlier"[1] payments for services provided during fiscal years ending 1998 through 2006. While this action is, by any reasonable measure, expansive, the motion presently before the Court – the Secretary's [31] Motion to Dismiss or for Judgment on the Pleadings – is significantly narrower in scope, as it seeks dismissal only of Plaintiffs' claims relating to four documents issued by the Centers for Medicare and Medicaid Services ("CMS") (in the form of three program memoranda and one program

---

[1] As explained in greater detail in this Memorandum Opinion, *see infra* Part I.A., an outlier payment is a supplemental payment granted to a hospital when it treats an extreme case in which its costs, as estimated based upon the hospital's billed charges, exceed the standard Medicare payment by more than a certain dollar amount set by the Secretary, known as the "fixed loss threshold."

transmittal) that, according to Plaintiffs, direct CMS's fiscal intermediaries regarding the reopening of Medicare payment determinations.  This motion is now fully briefed and ripe for adjudication.  Upon a review of the parties' submissions, the applicable authorities, and the record as a whole, the Court shall GRANT the Secretary's motion to dismiss and DENY Plaintiffs' request to file a surreply in opposition thereto.

## I.  BACKGROUND

### A.  Statutory and Regulatory Framework[2]

Medicare "provides federally funded health insurance for the elderly and disabled," *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1226-27 (D.C. Cir. 1994), through a "complex statutory and regulatory regime," *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993).  The program is administered by the Secretary through CMS.  *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205 (D.C. Cir. 2011).

From its inception in 1965 until 1983, Medicare reimbursed hospitals based on "the 'reasonable costs' of the inpatient services that they furnished."  *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir. 1999) (quoting 42 U.S.C. § 1395f(b)), *cert. denied*, 530 U.S. 1204 (2000).  However, "[e]xperience proved . . . that this system bred 'little incentive for hospitals to keep costs down' because '[t]he more they spent, the more they were reimbursed.'" *Id.* (quoting *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 974 (D.C. Cir. 1991)).

In 1983, with the aim of "stem[ming] the program's escalating costs and perceived inefficiency, Congress fundamentally overhauled the Medicare reimbursement methodology." *Cnty. of Los Angeles*, 192 F.3d at 1008 (citing Social Security Amendments of 1983, Pub. L. No.

---

[2] To provide the necessary context for resolution of the pending motion, the Court shall recount its explanation of the regulatory scheme, to the extent here relevant, as set out in its July 15, 2011 Memorandum Opinion.  *See Banner Health v. Sebelius*, 797 F. Supp. 2d 97 (D.D.C. 2011).

98-21, § 601, 97 Stat. 65, 149).  Since then, the Prospective Payment System, as the overhauled regime is known, has reimbursed qualifying hospitals at prospectively fixed rates.  *Id.*  By enacting this overhaul, Congress sought to "reform the financial incentives hospitals face, promoting efficiency in the provision of services by rewarding cost[-]effective hospital practices."  H.R. Rep. No. 98-25, at 132 (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 351.

In calculating prospective payment rates, the Secretary begins with the "standardized amount," a figure that approximates the average cost incurred by hospitals nationwide for each treated patient.  *See* 42 U.S.C. § 1395ww(d)(2).[3]  To account for regional variations in labor costs, the Secretary then "determines the proportion of the standardized amount attributable to wages and wage-related costs and then multiples that labor-related proportion by a wage index that reflects the relation between the local average of hospital wages and the national average of hospital wages."[4]  *Cape Cod*, 630 F.3d at 205 (internal quotation marks omitted; citing, *inter alia*, 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E)).  Finally, the standardized amount is weighted to "reflect[] the disparate hospital resources required to treat major and minor illnesses."  *Cnty. of Los Angeles*, 192 F.3d at 1008 (citing 42 U.S.C. § 1395ww(d)(4)).  Specifically, "Medicare patients are classified into different groups based on their diagnoses, and each of these 'diagnosis-related groups' ["DRGs"] is assigned a particular 'weight' representing the relationship between the cost of treating patients within that group and the average cost of treating all Medicare patients."  *Cape Cod*, 630 F.3d at 205-06 (citing 42 U.S.C. §

---

[3] Following Congress's directive, the Secretary "does not calculate the standardized amount from scratch each year," but "[i]nstead . . . calculated the standardized amount for a base year and . . . carrie[s] that figure forward, updating it annually for inflation."  *Cape Cod*, 630 F.3d at 205 (citing, *inter alia*, 42 U.S.C. § 1395ww(b)(3)(B)(I), (d)(2), (d)(3)(A)(iv)(II); 42 C.F.R. § 412.64(c)-(d)).

[4] "Unlike the standardized amount, wage indexes are calculated anew each year."  *Cape Cod*, 630 F.3d at 205 (citing, *inter alia*, 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E)).

1395ww(d)(4)).   Therefore, to calculate how much a hospital should be paid for treating a

particular case, the Secretary "takes the [standardized amount], adjusts it according to the wage

index, and then multiplies it by the weight assigned to the patient's [DRG]."   *Cnty. of Los*

*Angeles*, 192 F.3d at 1009.   The result is commonly referred to as the "DRG prospective

payment rate."   *Id.*

"Congress recognized that health-care providers would inevitably care for some patients

whose hospitalization would be extraordinarily costly or lengthy" and devised a means to

"insulate hospitals from bearing a disproportionate share of these atypical costs."   *Cnty. of Los*

*Angeles*, 192 F.3d at 1009.   Specifically, Congress authorized the Secretary to make

supplemental "outlier" payments to eligible providers.   *Id.*   Outlier payments are governed by 42

U.S.C. § 1395ww(d)(5)(A), which provides, in relevant part, as follows:

> (ii)   . . . [A] hospital [paid under the Prospective Payment
> System] may request additional payments in any case
> where charges, adjusted to cost, . . . exceed the sum of the
> applicable DRG prospective payment rate plus any
> amounts payable under subparagraphs (B) and (F)[5] plus a
> fixed dollar amount determined by the Secretary.

> (iii)   The amount of such additional payment . . . shall be
> determined by the Secretary and shall . . . approximate the
> marginal cost of care beyond the cutoff point applicable
> under clause . . . (ii).

42 U.S.C. § 1395ww(d)(5)(A); *see also* 42 C.F.R. §§ 412.80-412.86 (implementing regulations).

Each fiscal year, the Secretary determines a fixed dollar amount that, when added to the

DRG prospective payment, serves as the cutoff point triggering eligibility for outlier payments.

*See* 42 U.S.C. § 1395ww(d)(5)(A)(ii), (iv); 42 C.F.R. § 412.80(a)(2)-(3).   This fixed dollar

---

[5] The referenced subparagraphs contemplate certain add-on payments to offset the costs of
graduate medical education and care of low-income patients.  *See* 42 U.S.C. § 1395ww(d)(5)(B),
(F).  These and other intricacies of the outlier payment system are not at issue in this action.

amount is known as the "fixed loss threshold."  If a hospital's approximate costs actually incurred in treating a patient exceed the sum of the DRG prospective payment rate and the fixed loss threshold, then the hospital is eligible for an outlier payment in that case.  *See* 42 U.S.C. § 1395ww(d)(5)(A)(ii)-(iii); 42 C.F.R. § 412.80(a)(2)-(3).  In this way, the fixed loss threshold represents the dollar amount of loss that a hospital must absorb in any case in which the hospital incurs estimated actual costs in treating a patient above and beyond the DRG prospective payment rate.  An increase in the fixed loss threshold reduces the number of cases that will qualify for outlier payments as well as the amount of payments for qualifying cases.

In designing the Prospective Payment System, Congress provided that "[t]he total amount of the additional [outlier] payments . . . for discharges in a fiscal year may not be less than 5 percent nor more than 6 percent of the total payments projected or estimated to be made based on DRG prospective payment rates for discharges in that year."  42 U.S.C. § 1395ww(d)(5)(iv). Under the Secretary's interpretation of the statute, which has been upheld by the United States Court of Appeals for the District of Columbia Circuit, "she must establish the fixed [loss] thresholds beyond which hospitals will qualify for outlier payments" at the start of each fiscal year.  *Cnty. of Los Angeles*, 192 F.3d at 1009.  To do so, the Secretary first makes a predictive judgment about the total amount of payments that can be expected to be paid based on DRG prospective payment rates.  *Cnty. of Los Angeles*, 192 F.3d at 1009.  She then examines historical data to determine the threshold that "would probably yield total outlier payments falling within the five-to-six-percent range."  *Id.*  For obvious reasons, "[w]hether the Secretary's projections prove to be correct will depend, in large part, on the predictive value of the historical data on which she bases her calculations."  *Id.*  In each of the fiscal years at issue in this action, the

Secretary set fixed loss thresholds at a level so that the anticipated total of outlier payments would equal 5.1% of the anticipated total of payments based on DRG prospective payment rates.

As aforementioned, if a hospital's approximate costs actually incurred in treating a patient exceed the sum of the DRG prospective payment rate and the fixed loss threshold, then the hospital is eligible for an outlier payment in that case. *See* 42 U.S.C. § 1395ww(d)(5)(A)(ii)-(iii); 42 C.F.R. § 412.80(a)(2)-(3). The amount of the outlier payment is "determined by the Secretary" and must "approximate the marginal cost of care" beyond the fixed loss threshold. 42 U.S.C. § 1395ww(d)(5)(A)(iii). During the time period relevant to this action, the implementing regulations generally provided for outlier payments equal to eighty percent of the difference between the hospital's estimated operating and capital costs and the fixed loss threshold. *See* 42 C.F.R. § 412.84(k). In this way, "[t]he amount of the outlier payment is proportional to the amount by which the hospital's loss exceeds the [fixed loss] threshold." *Dist. Hosp. Partners*, 2011 WL 2621000, at *2 (citing 42 C.F.R. § 412.84(k)).

## B. Procedural Background

Plaintiffs are twenty-nine organizations that own or operate hospitals participating in the Medicare program. Am. Compl., ECF No. [16], ¶ 22. Plaintiffs contend that during fiscal years 1998 through 2006, they were deprived of more than $350 million in outlier payments. *Id.* ¶ 17. Plaintiffs filed appeals with the Provider Reimbursement Review Board ("PRRB"), each challenging the Secretary's final outlier payment determinations for the fiscal years in question. *Id.* ¶¶ 191-92. Because Plaintiffs' administrative appeals called into question the underlying validity of regulations promulgated by the Secretary, the PRRB determined that it was without authority to resolve the matters raised and, upon Plaintiffs' petition, authorized expedited judicial review pursuant to 42 U.S.C. § 1395oo(f)(1). *Id.* ¶¶ 193-95 & Exs. A-B.

Plaintiffs commenced the instant civil action on September 27, 2010, claiming that this Court has jurisdiction under the Medicare Act, 42 U.S.C. § 1395oo(f)(1), and the Mandamus Act, 28 U.S.C. § 1361.  *See* Compl., ECF No. [1].  On December 23, 2010, Plaintiffs filed an Amended Complaint as a matter of right, which remains the operative iteration of the Complaint in this action.  *See* Am. Compl., ECF No. [16].

As this Court has previously observed, Plaintiffs' Amended Complaint is "sprawling"; it contains over two hundred paragraphs, spans fifty-nine pages, and appends two lengthy exhibits. In the opening paragraph, Plaintiffs claim to seek "judicial review of the final administrative decisions of the Secretary . . . as to the amount of Medicare 'outlier' payments due Plaintiffs for services provided under the Medicare program for fiscal years 1998 - 2006," Am. Compl. ¶ 1, but in fact, the allegations in the Amended Complaint sweep much more broadly.  *See Banner Health*, 797 F. Supp. 2d 97, 104 (D.D.C. 2011).  Indeed, Plaintiffs do not claim that the Secretary made a clerical error resulting in a miscalculation of their outlier payments; rather, Plaintiffs contend that the agency regulations underlying those calculations were inherently flawed. Specifically, Plaintiffs challenge the validity of a series of regulations establishing the methodology for calculating outlier payments (the "Outlier Payment Regulations"), 42 C.F.R. §§ 412.80-412.86, as well as the Secretary's annual promulgation of the regulations through which she set the fixed loss threshold for the upcoming fiscal year, for fiscal years 1998 through 2006 (the "Fixed Loss Threshold Regulations"). [1]

---

[1]   *See* MEDICARE PROGRAM; CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 1998 RATES, 62 Fed. Reg. 45,966 (Aug. 29, 1997); MEDICARE PROGRAM; CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 1999 RATES, 63 Fed. Reg. 40,954 (July 31, 1998); CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 2000 RATES, 64 Fed. Reg. 41,490 (July 30, 1999); CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 2001 RATES, 65 Fed. Reg. 47,054 (Aug. 1, 2000); CHANGES TO THE HOSPITAL INPATIENT

On January 28, 2011, the Secretary filed a motion to dismiss, which this Court granted in part and denied in part. *See Banner Health*, 797 F. Supp. 2d 97. Specifically, the Court dismissed Plaintiffs' claims seeking payments under the Mandamus Act, 28 U.S.C. § 1361, as well as Plaintiffs' claims under the Medicare Act to the extent that such claims relied on vague allegations challenging the Secretary's "implementation" and "enforcement" of the outlier payment system that are "unconnected to any discrete agency action." *See id*. at 118. The Court otherwise denied the Secretary's motion to dismiss. Further, the Court concluded that, in light of the extraordinary breadth of the allegations in the Amended Complaint, proceeding immediately to the filing of the administrative record and the subsequent briefing of motions for summary judgment would not be the most expeditious manner of proceeding in the action. Rather, the Court considered it appropriate to gain further clarity as to the precise contours of Plaintiffs' claims and to that end ordered Plaintiffs to file a "notice of claims," identifying, in bullet-point format, each circumscribed, discrete agency action that Plaintiffs intend to challenge. *Id*. at 117-18.

On July 27, 2011, Plaintiffs filed their Notice of Claims. For convenience of the Court and parties, and for good reason, Plaintiffs' Notice of Claims does not specify each and every outlier payment challenged by the twenty-nine individual hospital plaintiffs. Rather, the filing

---

PROSPECTIVE PAYMENT SYSTEMS AND RATES AND COSTS OF GRADUATE MEDICAL EDUCATION: FISCAL YEAR 2002 RATES, 66 Fed. Reg. 39,828 (Aug. 1, 2001); CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 2003 RATES, 67 Fed. Reg. 49,982 (Aug. 1, 2002); CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 2004 RATES, 68 Fed. Reg. 45,346 (Aug. 1, 2003); CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 2005 RATES, 69 Fed. Reg. 48,916 (Aug. 11, 2004); CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 2006 RATES, 70 Fed. Reg. 47,278 (Aug. 12, 2005).

groups all agency actions contested in this action by hospital fiscal years ("FYs").[6]  While the challenged outlier payment determinations span nine years, the alleged flaws in the regulatory scheme listed by Plaintiffs repeat year after year.  Synthesized thematically, the discrete agency actions enumerated in Plaintiffs' Notice are limited to the following:

- "the Secretary's determination of the number and dollar amounts of outlier program payments for the Plaintiffs' respective FYs [as challenged by each Plaintiff as set forth in Paragraph 22 of the Amended Complaint]"[7];

- "the Secretary's determination, promulgation and application of invalid Fixed Loss Threshold Regulations applicable to patient discharges occurring during the [Federal Fiscal Years] ending September 30 [of 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, and 2007]"[8];

- "the Secretary's promulgation of and continued application of invalid Outlier Payment Regulations, as amended in 1988 [,] further amended in 1994 [,] and further amended in 2003"[9];

- "the Secretary's failure to grapple with and correct for CMS's acknowledged historical mistakes, which resulted in underpayments [ ], in connection with her promulgation and application, in 2003, of amended Outlier Payment Regulations and Fixed Loss Threshold Regulations"[10]; and

---

[6] The Amended Complaint identifies each specific FY of Medicare reimbursement that each separate hospital plaintiff is challenging.  *See* Am. Compl. ¶ 22.  According to Plaintiffs, as pleaded, the individual hospitals' FYS do not cover identical periods, but instead end on a variety of dates in any given calendar year.  *See* Pl.'s Notice of Claims at 2.  Plaintiffs further note that any one of the given hospitals' FYs typically spans two federal fiscal years (which ends September 30) and that due to the variety of periods comprising the hospitals' FYs, up to three federal fiscal years of regulations promulgated by the Secretary may be implicated with respect to reimbursement for any given year's grouping of FY for the hospital plaintiffs.  *Id.*

[7] Plaintiffs contest this agency action as applicable to outlier payments received from the Secretary for discharges occurring during Plaintiffs' FYs 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006.

[8] Plaintiffs contest this agency action as applicable to outlier payments received from the Secretary for discharges occurring during Plaintiffs' FYs 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006.

[9] Plaintiffs contest this agency action as applicable to outlier payments received from the Secretary for discharges occurring during Plaintiffs' FYs 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006.

[10] Plaintiffs contest this agency action as applicable to outlier payments received from the Secretary for discharges occurring during Plaintiffs' FYs 2003, 2004, 2005, and 2006.

- "the Secretary's directions, starting in late 2002, to CMS's fiscal intermediaries to reopen hospital cost reports only for purposes of reconciling and recovering outlier overpayments, but not for purposes of reconciling and recovering outlier underpayments, as set forth in the Secretary's issuance, through CMS, of Program Memorandum A-02-122 (December 3, 2002), Program Memorandum A-02-126 (December 20, 2002), Program Memorandum A-03-058 (July 3, 2003) [, and] Transmittal 707 (Medicare Claims Processing Manual, Chapter 3, § 20.1.2.5(A))".[11]

Pls.' Notice of Claims, ECF No. [29], at 2-11.

In summary, in addition to the outlier payment determinations specific to each of the hospital plaintiffs, Plaintiffs' challenge the promulgation and implementation of the following: three sets of Outlier Payment Regulations promulgated in 1988, 1994, and 2003; eleven sets of Fixed Loss Threshold Regulations for federal fiscal years 1997 through 2007; and the Secretary's directions to CMS's fiscal intermediaries regarding the reopening of hospitals' cost reports (allegedly contained within four documents issued by CMS).

After Plaintiffs filed their Notice of Claims, the Court, having achieved greater clarity regarding the scope of this action, granted the Secretary leave to file her pending motion to dismiss or for judgment on the pleadings. *See* Scheduling and Procedures Order (Aug. 19, 2011) ("Scheduling Order"), ECF No. [29]. The Court ordered that the Secretary may file a targeted motion pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings, and Federal Rule of Civil Procedure 12(h)(3), for lack of subject matter jurisdiction, seeking dismissal of Plaintiffs' claims regarding the four documents issued by CMS. *Id.* The Court precluded the Secretary from raising any argument that should be resolved with reference to the administrative record. *Id.* The Secretary filed her motion on August 31, 2011. *See* Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction or for Judgment

---

[11] Plaintiffs contest this agency action as applicable to outlier payments received from the Secretary for discharges occurring during Plaintiffs' FYs 2003.

on the Pleadings ("Def.'s Mem. in Supp. of Mot. to Dismiss"), ECF No. [31-1].   On September 21, 2011, Plaintiffs filed their opposition.   *See* Pls.' Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n to Def.'s Mot. to Dismiss"), ECF No. [32].   On September 30, 2011, the Secretary filed a reply.   *See* Def.'s Reply Mem. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction or for Judgment on the Pleadings ("Def.'s Reply in Supp. of Mot. to Dismiss"), ECF No. [33].

On October 4, 2011, Plaintiffs requested leave to file a surreply in opposition to the Secretary's motion to dismiss or for judgment on the pleadings, *see* Pls' Mot. for Leave to File Surreply in Opp'n to Def's Mot. to Dismiss for Lack of Subject Matter Jurisdiction or for Judgment on the Pleadings ("Pls.' Mot. for Leave to File Surreply"), ECF No. [34], to which the Secretary filed an opposition on October 6, 2011, *see* Def.'s Mem. of P. & A. in Opp'n to Pls.' Mot. for Leave to File Surreply in Opp'n to Def's Mot. to Dismiss for Lack of Subject Matter Jurisdiction or for Judgment on the Pleadings ("Def.'s Opp'n to Pls.' Mot. for Leave to File Surreply"), ECF No. [35].   Plaintiffs filed their Reply on October 11, 2011.   *See* Pls.' Reply in Supp. of Mot. for Leave to File Surreply in Opp'n to Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction or for Judgment on the Pleadings ("Pls.' Reply in Supp. of  Mot. to File Surreply"), ECF No. [36].   Accordingly, both the Secretary's motion to dismiss or for judgment on the pleadings and Plaintiffs' motion for leave to file a surreply in opposition thereto are fully briefed and ripe for adjudication.

## II.  DISCUSSION

### A.  Legal Standards

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P.

12(h)(3).   In assessing its jurisdiction over the subject matter of the claims presented, a court "must accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (internal quotation marks omitted), but courts are "not required ... to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F.Supp.2d 61, 64 (D.D.C. 2001).   Ultimately, the plaintiff bears the burden of establishing the Court's jurisdiction, *Rasul v. Bush*, 215 F.Supp.2d 55, 61 (D.D.C. 2002), and where subject-matter jurisdiction does not exist, "the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

The appropriate standard for reviewing a Rule 12(c) motion for judgment on the pleadings is "virtually identical" to that applied to a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *See Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006).   The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## B.   Analysis

### 1.   The Secretary's Motion to Dismiss or For Judgment on the Pleadings

Among Plaintiffs' remaining claims in this action are challenges relating to four documents issued by CMS (in the form of three program memoranda and one program transmittal) that, according to Plaintiffs, direct CMS's fiscal intermediaries regarding the reopening of Medicare payment determinations.   By way of background, to obtain reimbursement under the Medicare Act, hospitals submit yearly cost reports to fiscal intermediaries – typically private insurance companies acting on behalf of the Secretary.   After auditing the cost report, the intermediary issues a Notice of Program Reimbursement, in which it determines the amount owed to the hospital for the reporting year at issue.   42 C.F.R. § 405.1803.   The Act gives a dissatisfied hospital 180 days to appeal a reimbursement determination to the PRRB, whose decision is subject to judicial review in federal district court. 42 U.S.C. § 1395oo.   A regulation also gives the provider three years within which to ask the intermediary to reopen a determination.  42 C.F.R. § 405.1885

In Plaintiffs' Notice of Claims, Plaintiffs set forth their intent to challenge one – and only one – agency action in connection with these four documents:

> The Secretary's directions, starting in late 2002, to CMS's fiscal intermediaries to reopen hospital cost reports only for purposes of reconciling and recovering outlier overpayments, but not for purposes of reconciling and paying outlier underpayments, as set forth in the Secretary's issuance, through CMS, of Program Memorandum A-02-122 (December 3, 2002), Program Memorandum A-02-126 (December 20, 2002), Program Memorandum A-03-058 (July 3, 2003); Transmittal 707 (Medicare Claims Processing Manual, Chapter 3, § 20.1.2.5(A)).

Pls.' Notice of Claims, ECF No. [29], at 7.  Having taken Plaintiffs' representation at face value, the Secretary moved to dismiss all claims challenging alleged policies or decisions regarding the

reopening of hospital cost reports (the "Reopening Claims") for lack of subject matter jurisdiction, or alternatively, for judgment on the pleadings.[12]

Regarding the alleged lack of subject matter jurisdiction, the Secretary first argues that to the extent Plaintiffs purport to ground the Court's jurisdiction over the Reopening Claims in 42 U.S.C. § 1395oo, such claims must be dismissed because, as the Supreme Court made clear in *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449 (1999), while 42 U.S.C. § 1395oo authorizes review of determinations of payment amounts, it does not authorize review of decisions about whether to reopen determinations of payment amounts.  *See* Def.'s Mem. in Supp. of Mot. to Dismiss at 1, 8-10.  *See also Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 811 (D.C. Cir. 2001) ("[W]e fail to see how an attempt by the Secretary to establish a general policy against reopening in any way resembles a final determination 'as to the *amount of payment*,' the only kind of determination for which [42 U.S.C. § 1395oo] creates a right of appeal[.]") (emphasis in original).

The Secretary also argues that Plaintiffs cannot bring their Reopening Claims pursuant to the statute authorizing general federal question jurisdiction, 28 U.S.C. § 1331, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, because the Medicare statute

---

[12]  In her memorandum in support of her motion to dismiss, the Secretary makes the following observation:  "The plaintiffs characterize these four [CMS] issuances as setting forth a policy under which fiscal intermediaries were to 'reopen hospital cost reports only for purposes of reconciling and recovering outlier overpayments, but not for purposes of reconciling and paying outlier underpayments.'  Pls.' Notice of Claims 7.  The Secretary believes that the plaintiffs' description does not accurately reflect either the contents of the CMS issuances or the substance of the Secretary's policies.  However, for purposes of this motion, the Court can simply assume the truth of the plaintiffs' allegations regarding the substance of the issuances[.]"  Def.'s Mem. in Supp. of Mot. to Dismiss at 6.  In light of this statement and the unambiguous language of Plaintiffs' notice of claims, the Court shall, for purposes of resolution of the pending motion to dismiss, adopt Plaintiffs' characterization of the four CMS documents as setting forth the Secretary's directions to CMS's fiscal intermediaries regarding the reopening of hospital cost reports.

precludes district courts from exercising jurisdiction under 28 U.S.C. § 1331 over Medicare related claims. *See* Def.'s Mem. in Supp. of Mot. to Dismiss at 1, 10-11 (citing cases). *See also* 42 U.S.C. § 1395ii (incorporating by reference § 205(h) of the Social Security Act, which reads, in relevant part: "No action against the United States, the [Secretary], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."). Nor can Plaintiffs rely, the Secretary argues, on the Mandamus and Venue Act, 28 U.S.C. § 1361, as a basis for jurisdiction over the Reopening Claims. Indeed, relief pursuant to this Act, which authorizes jurisdiction over actions "in the nature of mandamus," is available only when a plaintiff can demonstrate that the defendant has a "clear nondiscretionary duty" to act, and the Supreme Court made clear in *Your Home Visiting Nurse Services* that decisions regarding the reopening of payment determinations are wholly discretionary. *See* Def.'s Mem. in Supp. of Mot. to Dismiss at 2,13-17.

Further, the Secretary contends that even if Plaintiffs could bring their Reopening Claims under the APA, because Plaintiffs have not alleged that they ever requested reopening of their payments, they cannot show that they have been affected by any policies regarding reopening, and the Reopening Claims must therefore be dismissed for failing to satisfy the jurisdictional requirement of ripeness. *See id.* at 1-2, 10, 11 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("[A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him.")).

Finally, relying on *Your Home Visiting Nurse Services* and the fact that the APA does not authorize review when "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), the Secretary argues in the alternative that even if Plaintiffs could establish subject matter jurisdiction, Plaintiffs Reopening Claims must be dismissed.  Specifically, the Secretary argues that because the reopening of Medicare payment determinations is a matter of agency discretion, the Reopening Claims fail to state a claim under the APA, and the Court should therefore grant the Secretary judgment on the pleadings.  *See id.* at 2, 11-13 (citing *Your Home Visiting Nurse Servs.*, 525 U.S. at 457 ("[T]he decision whether to reopen … is 'committed to agency discretion by law' within the meaning of the Administrative Procedure Act, and hence unreviewable")).

Upon careful consideration of all of the foregoing arguments, the Court finds the Secretary's motion well supported and well-reasoned.  Moreover, in their opposition, Plaintiffs nowhere dispute the merits of the Secretary's arguments regarding the lack of jurisdictional basis for challenges to reopening policies or decisions, nor her contention that such determinations are a matter of agency discretion.  *See generally* Pls.' Opp'n to Def.'s Mot. to Dismiss.  Plaintiffs also expressly acknowledge that they "have neither requested nor been denied the reopening of their respective reimbursement determinations here at issue."  *Id.* at 2.  "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997); *Stephenson v. Cox.*, 233 F. Supp. 2d 119, 121 (D.D.C. 2002)), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004).  Here, by failing to rebut the Secretary's arguments, Plaintiffs have implicitly conceded

that the Court lacks jurisdiction over claims involving the reopening of Medicare payment determinations.  Accordingly, to the extent Plaintiffs' Amended Complaint could be read to bring claims directly challenging the Secretary's policies or decisions regarding the reopening of cost reports, such claims shall be dismissed.

Theoretically, the Court's discussion of Plaintiffs' Reopening Claims should end there. In this case, however, the practical import the Court's dismissal of Plaintiffs' Reopening Claims is less than clear, as Plaintiffs have already expressly disclaimed any intent to bring a direct challenge to reopening determinations.  *See*  Pls.' Opp'n to Def.'s Mot. to Dismiss at 2.  For this reason, Plaintiffs contend, the Secretary's motion is futile and the jurisdictional arguments therein inapposite to both the facts and claims of the instant case.

Specifically, Plaintiffs make clear – contrary to the plain language in their Notice of Claims – that they never intended to challenge the reopening instructions as such, but rather, that Plaintiffs listed the four CMS documents in their Notice of Claims to put the Secretary on "notice" that the documents "are an aspect of the Hospital Plaintiffs' challenges to the Outlier Payment Regulations and the Fixed Loss Threshold Regulations, which challenges underlie their reimbursement claims."  Pls.' Opp'n to Def.'s Mot. to Dismiss at 6.  Put differently, Plaintiffs contend that the instructions contained within the CMS documents "relate to" the Secretary's promulgation and implementation of the Outlier Payment Regulations and Fixed Loss Threshold Regulations and are therefore "relevant" in "various respects" to all of Plaintiffs' claims.  *Id*. at 9-10.  Further, Plaintiffs explain that although the Notice of Claims specifically reference the four documents as directing "reopening," the documents collectively "deal with" several "other topics," such as instructions to fiscal intermediaries regarding auditing hospital cost reports and outlier payments.  *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 10.

17

Plaintiffs' vague offering of the "relevance" of the four CMS documents to Plaintiffs' overall challenge is simply insufficient to state a claim based upon those four documents. As the Court explained at length in its July 15, 2011 Memorandum Opinion ruling on the Secretary's first motion to dismiss, *Banner Health*, 797 F. Supp. 2d at 109, judicial review of Plaintiffs' claims under the Medicare Act rests on 42 U.S.C. § 1395oo, which incorporates the APA. *See* 42 U.S.C. § 1395oo(f)(1). Under the APA, the reviewing court is generally confined to evaluating "final agency action," 5 U.S.C. § 704, which may include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," *id.* § 551(13). Each of these enumerated categories implicates "circumscribed, discrete agency actions," a limitation designed in large part "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 & 66 (2004).

Here, Plaintiffs have expressly disavowed their intent to challenge the Secretary's instructions regarding reopening determinations, but they have not identified any other specific policies contained within the documents with which they take issue. Plaintiffs offer only two examples of the "other topics" addressed in the documents – instructions to intermediaries regarding "auditing hospital cost reports and outlier payments to gather and report information concerning excessive outlier payments" and "audit[ing] and reconcil[ing] outlier payments prior to, and after, final settlement of provider cost reports" as mandated in the applicable Outlier Payment Regulations. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 10. Beyond assertions of relevance, Plaintiffs fail to explain how instructions of this sort amounted to "discrete agency actions" affecting the amount of their Medicare reimbursements, separate and apart from the Outlier Payment Regulations which they purport to implement. Further, Plaintiffs' contention

that the documents "otherwise reflect [the Secretary's] interpretation and implementation of the outlier regulatory scheme" plainly "lacks the specificity requisite for agency action." *S. Utah Wilderness Alliance*, 542 U.S. at 66.   As the Secretary suggests in her reply memorandum, Plaintiffs' challenge to the "many topics" addressed in the CMS issuances is, in effect, a fishing expedition for information to support an attack on the Secretary's "overall 'implementation' and 'enforcement' of the outlier payment system," the sort of attack this Court has already rejected. Def.'s Reply in Supp. of Mot. to Dismiss at 7, n.1 (citing *Banner Health*, 797 F. Supp. 2d 97).

As the parties' discordant briefing on this matter suggests, the instant appears to be less about the bounds of Plaintiffs' challenge than about the content of the administrative record before the Court.   Indeed, Plaintiffs final argument in opposition to the Secretary's motion is that the record produced in this case will be deficient without the CMS issuances and documents related thereto, as such documents are an integral part of the Secretary's rulemakings and implementation of the outlier regulations and statute.   *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 14-16.   However, Plaintiffs challenging administrative action ordinarily are not entitled to discovery beyond the administrative record compiled by the agency.   *See Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("Supplementation of the administrative record is the exception, not the rule.").   "[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record."   *Id*.   "A plaintiff cannot merely assert [ ] that materials were relevant or were before an agency when it made its decision.   Instead, the plaintiff must identify reasonable, *non-speculative grounds* for its belief that the documents were *considered* by the agency and not included in the record.   *See also Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010) (citations omitted, quotations omitted, and emphasis in original).

Here, Plaintiffs shall not be permitted to perform an end-run around this basic principle by injecting this action with ill-defined claims.  Rather, to the extent Plaintiffs argue that the CMS issuances and related documents belong in the administrative record, they must introduce "concrete evidence" to prove that those documents were considered by the Secretary in connection with the promulgation of the challenged Outlier Payment Regulations and Fixed Loss Threshold Regulations, yet were improperly omitted from the administrative record filed with the Court.  *Pac. Shores*, 448 F. Supp. 2d at 6 (citing *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)).  Absent such a showing, and because at the time the instant motions were fully briefed the Secretary had not yet filed the complete administrative record with the Court, the Court declines to issue any holdings regarding the scope of the administrative record.  Rather, whether the administrative record should be supplemented to include the CMS documents is a question that shall be addressed in the context of the Court's ruling on Plaintiffs' more recently filed Motion to Compel Defendant to File the Complete Administrative Record and to Certify the Same, ECF No. [60], after the Court has received and considered the parties' outstanding supplemental briefing in connection therewith.

### 2.  Plaintiffs' Motion for Leave to File Surreply

On October 4, 2011, Plaintiffs filed a motion for leave to file a surreply in opposition to the Secretary's motion to dismiss, *see* Pls.' Mot. for Leave to File Surreply, which the Secretary has opposed, *see* Def.'s Opp'n to Pls.' Mot. for Leave to File Surreply.  The Local Rules of this Court contemplate that there ordinarily will be at most three memoranda associated with any given motion: (i) the movant's opening memorandum; (ii) the non-movant's opposition; and (iii) the movant's reply.  *See* LCvR 7.  Nonetheless, when the nonmovant is deprived of the opportunity to contest matters raised for the first time in the movant's reply, the non-movant may

seek the district court's leave to file a surreply.  *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir.2003).    However, surreplies are generally disfavored, *Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010), and the determination as to whether to grant or deny leave is entrusted to the sound discretion of the district court, *Akers v. Beal Bank*,760 F. Supp. 2d 1, 2 (D.D.C. 2011).  In exercising its discretion, the court should consider whether the movant's reply in fact raises arguments or issues for the first time, whether the non-movant's proposed surreply would be helpful to the resolution of the pending motion, and whether the movant would be unduly prejudiced were leave to be granted.  *Glass v. LaHood,* 786 F. Supp. 2d 189, 231 (D.D.C. May 20, 2011).

In this case, Plaintiffs argue that the Secretary's reply memorandum raised two new arguments that were not raised in her initial memorandum: (1) that Plaintiffs have "abandoned" "claims regarding supposed reopening policies" and that such "abandoned" claims should be dismissed, and (2) that Plaintiffs should be "preclude[d] … from raising new challenges against actions not identified in Plaintiffs' Notice of Claims." Pls.' Mot. for Leave to File Surreply at 2-3 (citing Def.'s Reply in Supp. of Mot. to Dismiss).  Neither of these alleged new arguments provide sufficient grounds for granting Plaintiffs the leave requested.

First, the Court shall pause to emphasize once again the limits of its ruling on the Secretary's motion to dismiss.  The Court has dismissed those claims premised upon allegations challenging the Secretary's directions, starting in late 2002, to CMS's fiscal intermediaries to reopen hospital cost reports only for purposes of reconciling and recovering outlier overpayments, but not for purposes of reconciling and recovering outlier underpayments.  The Court has made no holding as to the Secretary's purported request to preclude Plaintiffs from raising new challenges against actions not identified in Plaintiffs' Notice of Claims; nor would

the Court have occasion to issue such a holding in the absence of a request by Plaintiffs for leave to amend the Amended Complaint to add additional claims.  Accordingly, because the Court has not granted such relief, Plaintiffs can demonstrate no need to file a surreply on this issue.

Regarding the Secretary's contention that Plaintiffs have affirmatively "abandoned" their Reopening Claims, the Court finds that the Secretary was well within the bounds of a proper reply brief in raising this argument in response to Plaintiffs' repeated, unambiguous denials of any intent to challenge the Secretary's reopening determinations.  *See*, *e.g.*, Pls.' Opp'n to Def.'s Mot. to Dismiss at 2 (stating that plaintiffs "have neither requested nor been denied the reopening of their respective reimbursement determinations"); *id.* at 11 & n. 5 ("Plaintiffs here do not ask the Court to review the agency's refusal to reopen their final reimbursement determinations[.]").  As Courts consistently observe, when arguments raised for the first time in reply fall "within the scope of the matters [the opposing party] raised in opposition," and the reply "does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate." *Crummey v. Social Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011), *aff'd*, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012).  In any event, the Court has not relied on any arguments regarding Plaintiffs' purported "abandonment" of certain claims.  Rather, the Court has considered and agreed with the Secretary's well-reasoned jurisdictional arguments.  Plaintiffs cannot credibly dispute that these jurisdictional arguments were raised by the Secretary in her opening memorandum, and that Plaintiffs responded only indirectly thereto, distinguishing the authorities cited by the Secretary as inapposite to the instant case yet failing to rebut the Secretary's legal conclusions.  *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 11-13.  Accordingly, Plaintiffs were not deprived of an opportunity to respond to the arguments upon which the Court has relied in dismissing the Reopening Claims such that might warrant granting leave to file a

surreply.   The Court's finding that Plaintiffs have conceded the merits of such arguments by failing to address them is well supported in the case law, *Hopkins*, 284 F. Supp. 2d at 25, and, importantly, is distinct from a finding – not here made – that Plaintiffs have affirmatively "abandoned" any claims.

Because the Court finds that a surreply would be of no assistance to the resolution of the pending motion, Plaintiffs' motion for leave to file a surreply in opposition to the Secretary's motion to dismiss shall be denied.

### III.  CONCLUSION

For all of the foregoing reasons, the Secretary's [31] Motion to Dismiss or for Judgment on the Pleadings shall be GRANTED, and Plaintiffs' [34] Motion for Leave to File a Surreply shall be DENIED.   Accordingly, the Court shall dismiss all claims that are premised upon a challenge to the Secretary's directions, starting in late 2002, to CMS's fiscal intermediaries to reopen hospital cost reports only for purposes of reconciling and recovering outlier overpayments, but not for purposes of reconciling and recovering outlier underpayments.

Date:   November 26, 2012

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge